**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 2 2 2021

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | |
|---|---|
| AUSTIN FUTRELLL, SPECIAL ADMINISTRATOR OF THE ESTATE OF CHRISTI ROOKS, deceased,<br><br>             Plaintiff<br><br>v.<br><br>CONAIR LLC,<br>f/k/a Conair Corporation,<br><br>             Defendant | Case No. 2:21-cv-156-BSM<br><br>**Jury Trial Demanded** |

## COMPLAINT FOR DAMAGES

Comes now Austin Futrell, Special Administrator of the Estate of Christi Rooks, by and through his attorneys, Austin H. Easley and George E. McLaughlin, and for his Complaint against Conair, LLC, f/k/a Conair Corporation, states:

### PARTIES

1.    Plaintiff Austin Futrell, Special Administrator of the Estate of Christy Rooks, deceased, brings this cause of action for claims and causes of action based on Arkansas' law of product liability, that accrued and vested in Christy Rooks on the date of January 11, 2019, and survived her death.

2.    Plaintiff's decedent, Christy Rooks, died in January 2020 of causes unrelated to the January 11, 2019, event that is the subject of this civil action.

This case assigned to District Judge *Miller*
and to Magistrate Judge *Ray*

3.      At all relevant times hereto, Christy Rooks, was an adult citizen of the state of Arkansas, residing in Wynne, Cross County, Arkansas.

4.      The Estate of Christy Rooks, deceased, is pending in the Probate Court of the Circuit Court of Cross County, Arkansas.

5.      Plaintiff Austin Futrell, Special Administrator of the Estate of Christy Rooks, is a citizen of Cross County, Arkansas.

6.      Defendant Conair LLC, formerly known as Conair Corporation, is a Connecticut Limited Liability Company, with its principal place of business located at the physical address of 1 Cummings Point Road, Stamford, Connecticut 06902.  As such Conair LLC is a citizen of the state of Connecticut.

7.      The members of Defendant Conair LLC, are Richard G. Sobel, Eric D. Herman, Mike Baldino, all of whom are citizens of the state of New Jersey.

8.      Defendant Conair LLC, has on file with the Arkansas Secretary of State documents disclosing that it does business in the state of Arkansas, and has as its registered agent in the state of Arkansas CT Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

9.      Conair Corporation previously was registered to do business in the state of Arkansas.

10.     Prior to the filing of this civil action Conair Corporation converted its business entity from a for-profit corporation to a for-profit limited liability company.

11.     Defendant Conair LLC [hereinafter "Conair"] is the successor of the entity formerly known as Conair Corporation.

2

## JURISDICTION & VENUE

12.     This United States Federal District Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13.     The injury to the Plaintiff's decedent, directly and proximately caused by the Defendants' defective product, occurred in Cross County, Arkansas.

14.     At all times relevant hereto, Defendant Conair, was doing business in the state of Arkansas and/or is otherwise subject to the jurisdiction of courts in the state of Arkansas, including this United States Federal District Court for the Eastern District of Arkansas.

15.     Venue is proper in this United States Federal District Court pursuant to 28 U.S.C. § 1391(a) and (c), as a substantial part of the events giving rise to this claim occurred in the Eastern District of Arkansas.

## FACTUAL ALLEGATIONS

### The Conair Heating Pad

16.     At all times relevant hereto, Conair was the designer, manufacture, supplier, and/or importer of devices known as heating pads.

17.     At all times relevant hereto, Conair was the designer, manufacturer, supplier, and/or importer of devices known as heating pads that it branded as "Conair®, including the Conair Moist Heat Heating Pad, Model HP01XF.

18.    At all times relevant hereto, all Conair® branded heating pads were required to comply with UL 130 - Standard for Electric Heating Pads.

19.    At all times relevant hereto, all Conair® branded heating pads were required to comply with prevailing standards in the industry.

20.    At all times relevant hereto, all Conair® branded heating pads were required to comply with all applicable governmental laws and regulations found in United States Code, Title 21, the Federal Food, Drug, and Cosmetic Act.

21.    At all times relevant hereto, all Conair® branded heating pads were and are required to comply with all applicable governmental laws and regulations found in Title 21, Code of Federal Regulations (CFR).

22.    Pursuant to Section 201(h) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(h), Conair heating pads are "devices" because they are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body.

23.    The United States Food and Drug Administration [FDA] had previously informed Conair, by way of a "WARNING LETTER – CMS3 406221", that its heating pad devices were "adulterated" within the meaning of Section 501(h) of 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation were not in conformity with the current good manufacturing practice requirements of the Quality System Regulation found at Title 21, Code of Federal Regulations (CFR), Part 820.

24.     Prior to January 11, 2019, Conair had received complaints from consumers informing it, and placing it on notice, that consumers had received third degree burns while using its heating pads.

25.     Prior to January 11, 2019, Conair had received complaints from consumers informing it, and placing it on notice, that consumers had received burns while using its heating pads that required medical attention.

26.     In response to these complaints Conair made no attempt to contact the complainant to obtain additional information regarding the injury.

27.     Conair did not establish and maintain procedures for receiving, reviewing, and evaluating complaints to determine whether the complaint represents an event which is required to be reported to FDA under 21 CFR Part 803, Medical Device Reporting, as required by 21 CFR 820.198(a)(3).

28.     Conair did not establish and maintain procedures to control the design of the device in order to ensure that specified design requirements were met, as required by 21 CFR 820.30(a).  For example, Conair did not have a design control procedure in place to assure that its marketed heating pad devices meet specified design requirements. Conair was not able to provide detailed design information for its currently marketed heating pads.

29.     Conair did not establish and maintain procedures for implementing corrective and preventive action, as required by 21 CFR 820.100(a).  For example, Conair did not have a written CAPA [Corrective Action Preventative Action] procedure to

assure that complaints were analyzed to identify existing and potential causes of nonconforming products or other quality problems.

30.     Conair did not have any formal process to review complaints to identify any existing or potential causes of nonconforming product or other quality problems.

31.     Conair heating pad devices were misbranded under Section 502(t)(2) of 21 U.S.C. § 352(t)(2), in that Conair failed or refused to furnish to the FDA material or information respecting the device [heating pads that were the subject of complaints of serious personal injury] that was required by or under Section 519 of 21 U.S.C. § 360i, and 21 CFR Part 803 - Medical Device Reporting, including, but not limited to, the following:

(a)     Failure to submit a report to FDA no later than 30 calendar days after the day that Conair received or otherwise became aware of information that reasonably suggested that a marketed Conair heating pad may have caused or contributed to a death or serious injury, as required by 21 CFR 803.50(a)(1). For example, a complaint that described a patient receiving a third degree burn following use of the Conair Heating Pad.

(b)     Failure to submit a report to the FDA no later than 30 calendar days after the day Conair received or otherwise became aware of information that reasonably suggested that a Conair heating pad malfunctioned and this device or a similar device that it markets would likely cause or contribute to a death or serious injury, if the malfunction were to recur, as required by 21 CFR 803.50(a)(2). For

example, information in some complaints reasonably suggested that Conair heating pads malfunctioned and caused fires.

(c)   Failure to develop, maintain and implement written Medical Device Reporting (MDR) procedures, as required by 21 CFR 803.17.

32.   Prior to January 11, 2019, Conair was on notice that some of its heating pads were heating to temperatures in excess of those permitted by UL 130 - Standard for Electric Heating Pads.

33.   Prior to January 11, 2019, Conair was on notice that some of its heating pads were heating to temperatures in excess of those acceptable by industry standards.

34.   Prior to January 11, 2019, Conair was on notice that some of its heating pads were overheating to temperatures that caused melting the plastic shell of the heating pad.

35.   Prior to January 11, 2019, Conair was on notice that some of its heating pads were overheating to temperatures that caused serious burn injuries to users of its products while being used in a reasonably foreseeable manner.

### January 11, 2019, Injury to Christy Rooks

36.   On January 11, 2019, the mother of Plaintiff's decedent, Christy Rooks, purchased for her daughter the heating pad that is the subject of this civil action,

37.   The heating pad purchased for Plaintiff's decedent, Christy Rooks, was branded with the name "CONAIR®", and had printed on it information including, but not limited to:

© CONAIR CORPORATION

CONAIR® Moist Heat Heating Pad

7

MODEL HP01XF

MADE IN CHINA

CONFORMS TO UL STANDARD 130

[See Figure 1, below].



FIGURE 1

38.    On January 11, 2019, Plaintiff's decedent, Christy Rooks, used her Conair®

Moist Heat Heating Pad for the first time.

39.    On January 11, 2019, the Conair® Moist Heat Heating Pad being used by Christy Rooks heated to a temperature in excess of that permitted by UL 130 - Standard for Electric Heating Pads.

40.    On January 11, 2019, the Conair® Moist Heat Heating Pad being used by Christy Rooks heated to a temperature in excess of acceptable industry standards.

41.    On January 11, 2019, the Conair® Moist Heat Heating Pad being used by Christy Rooks heated to a temperature that caused melting the plastic shell of the heating pad.  [See Figure 2, below.]



Figure 2

9

42.    On January 11, 2019, the Conair® Moist Heat Heating Pad being used by Christy Rooks heated to the point of causing serious burn injuries to her body while being used in a reasonably foreseeable manner.

## ACCRUAL OF PLAINTIFF'S CAUSES OF ACTION

43.    Prior to January 11, 2019, Plaintiff's decedent had neither knowledge nor notice that there was any defect in the design or manufacture of her Conair Heating Pad.

44.    Plaintiff's decedent's causes of action alleged in this Complaint therefore did not accrue until January 11, 2019.

## FIRST CAUSE OF ACTION

## STRICT PRODUCT LIABILITY

## AR Code § 16-116-201 (2017)

## Arkansas Product Liability Act of 1979

45.    Conair was the "manufacturer" of the Conair® Moist Heat Heating Pad, Model HP01XF, that is the subject of this civil action, as that term is defined by AR Code § 16-116-202 (3).

46.    Conair was the "supplier" of the Conair® Moist Heat Heating Pad, Model HP01XF, that is the subject of this civil action, as that term is defined by AR Code § 16-116-202 (6).

47.    The Conair® Moist Heat Heating Pad, Model HP01XF, is a "product", as that term is defined by AR Code § 16-116-202 (4).

48.     The Conair® Moist Heat Heating Pad, Model HP01XF, used by Christy Rooks on January 11, 2019, was in a "defective condition" as that term is defined by AR Code § 16-116-202 (2).

49.     The Conair® Moist Heat Heating Pad, Model HP01XF, used by Christy Rooks on January 11, 2019, was "unreasonably dangerous" as that term is defined by AR Code § 16-116-202 (7).

50.     On January 11, 2019, Christy Rooks was an ordinary and reasonable buyer, consumer, or user who acquired or used the Conair® Moist Heat Heating Pad, who had nothing more than the ordinary knowledge of the community or of similar buyers, users, or consumers as to its characteristics, propensities, risks, dangers, and proper and improper uses, and had no special knowledge, training, or experience with such products, nor which she was required to possess.

51.     The Conair® Moist Heat Heating Pad, Model HP01XF, used by Christy Rooks on January 11, 2019, was "unreasonably dangerous" in that it was dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquired or used the product, assuming the ordinary knowledge of the community or of similar buyers, users, or consumers as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess.

52.     The Conair® Moist Heat Heating Pad, Model HP01XF, used by Christy Rooks on January 11, 2019, was "unreasonably dangerous" in that it:

(a)    Did not comply with the requirements of UL 130 - Standard for Electric Heating Pads;

(b)    Did not comply with the industry standards for electric heating pads;

(c)    Did not have sensing devices that would prevent it from heating to a temperature that would cause melting of the shell of the pad itself;

(d)    Did not have sensing devices that would prevent it from heating to the point of causing serious burn injuries to users of the pad during expected use;

(e)    Heated to a temperature in excess of that allowed by the requirements of UL 130 - Standard for Electric Heating Pads;

(f)    Heated to a temperature in excess of that allowed by industry standards for electric heating pads;

(g)    Heated to a temperature that caused melting of the shell of the pad itself;

(h)    Heated to a temperature that caused serious burn injuries to a user of the pad during expected use; and,

(i)    It was dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user.

53.    Defendant Conair is strictly liable to Plaintiff for the injuries and damages sustained and suffered by Christy Rooks, set forth elsewhere in this Complaint.

## SECOND CAUSE OF ACTION

### NEGLIGENCE

54.    Defendant owed a duty of reasonable care to the general public, including the Plaintiff's decedent, Christy Rooks, when it designed, manufactured, assembled, inspected, tested, marketed, supplied, and distributed the Conair® Moist Heat Heating Pad, Model HP01XF.

55.    Defendant breached this duty, and was negligent, by designing, manufacturing, assembling, inspecting, testing, marketing, supplying, and distributing the Conair® Moist Heat Heating Pad, Model HP01XF that:

(a)    Did not comply with its intended design and performance specifications;

(b)    Did not comply with the requirements of UL 130 - Standard for Electric Heating Pads;

(c)    Did not comply with the industry standards for electric heating pads;

(d)    Did not have sensing devices that would prevent it from heating to a temperature that would cause melting of the shell of the pad itself;

(e)    Did not have sensing devices that would prevent it from heating to the point of causing serious burn injuries to users of the pad during expected use;

(f)    Heated to a temperature in excess of that allowed by the requirements of UL 130 - Standard for Electric Heating Pads;

13

     (g)    Heated to a temperature in excess of that allowed by industry standards for electric heating pads;

     (h)    Heated to a temperature that caused melting of the shell of the pad itself;

     (i)    Heated to a temperature that caused serious burn injuries to a user of the pad during expected use; and,

     (j)    It was dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user.

56.    Defendant owed Plaintiff's decedent, Christy Rooks, a duty of reasonable care to discover the defects and not sell these products once the defects were discovered.

57.    Prior to January 11, 2019, Defendant Conair was on notice that its heating pads were defective, dangerous, did not comply with industry standard, and caused injury, as set forth above.

58.    In spite of what Defendant Conair knew, or should have known, it negligently continued to manufacture, assemble, market, supply, and distribute defective and dangerous Conair heating pads, including the Conair® Moist Heat Heating Pad, Model HP01XF, that is the subject of this civil action

59.    As a direct and proximate result of the negligence of Defendant Conair, as set forth in this Complaint, Plaintiff's decedent suffered severe burns from the Conair® Moist Heat Heating Pad she was using for the first time, and on the day that it was purchased.

60.     As a direct and proximate result of the negligence of Defendant Conair, as set forth in this Complaint, Plaintiff's decedent suffered the injuries and damages set forth in this Complaint.

## THIRD CASUE OF ACTION

## BREACH OF IMPLIED WARRANTIES

61.     Defendants impliedly warranted that the Conair Model HP01XF Heating Pad was reasonably safe for its intended use, was not defective, and was fit for the ordinary purposes for which it was intended.

62.     On January 11, 2019, the Conair® Moist Heat Heating Pad, Model HP01XF was being used by Plaintiff's decedent for the ordinary purposes for which it was intended.

63.     The Conair® Moist Heat Heating Pad, Model HP01XF was not reasonably safe for its intended use and was defective as described herein, and, therefore, was neither merchantable nor suited for the intended uses as impliedly warranted.

64.     As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff's decedent was injured by Defendant's Conair® Moist Heat Heating Pad, Model HP01XF and suffered the injuries and damages set forth in this Complaint.

## DAMAGES

65.     As a direct and proximate result of the acts and omissions of Defendant Conair alleged herein, Plaintiff's decedent Christy Rooks was injured and damaged, suffering severe burns to her body, and requiring hospitalization and painful treatment.

66.     The injuries and damages for which Plaintiff seeks compensation from Defendant include, but are not limited to:

(a)     Physical pain and suffering;

(b)     Emotional pain and suffering;

(c)     Permanent impairment and scarring;

(d)     Medical bills and expenses in excess of $87,000;

(e)     Loss of earnings;

(f)     Loss of enjoyment of life;

(g)     Pre- and post-judgment interest;

(h)     All such further relief, both general and specific, to which Plaintiff's decedent may have been entitled to.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant in his favor on behalf of Plaintiff's decedent, Christy Rooks, and for an award of compensatory damages in an amount considered fair and reasonable by a jury, and for all such further relief, both general and specific, to which Plaintiff may be entitled on behalf of Christy Rooks.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

_____
Austin H. Easley
Arkansas Bar No. 2010154
EASLEY & HOUSEAL, PLLC
P.O. Box 1115
Forrest City, Arkansas 72336-1115
Telephone: 870-633-1447
Email: austin@ehtriallawyers.com

and

George E. McLaughlin
Colorado Bar No. 16364
McLaughlin Law Firm, P.C.
1890 Gaylord Street
Denver, CO 80206-1211
Telephone: 720-420-9800
Email: GEM@mcllf.com
*Attorneys for Plaintiff*